# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NEVIN A. MAURER, SR.** and | : | **Civil No. 1:11-CV-2260** |
| **RUTH MAURER,** | : | |
| **Husband and Wife,** | : | **(Chief Judge Kane)** |
| | : | |
| **Plaintiffs** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **LLEWELYN A. WILLIAMS, M.D.,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

## I.  <u>INTRODUCTION</u>

The above-captioned action involves claims of medical malpractice arising out
of the administration of a cervical epidural steroid injection to plaintiff Nevin A.
Maurer, Sr. in December, 2009, at the Shamokin Area Community Hospital.  The
plaintiffs, Mr. Maurer and his wife Ruth Maurer, contend that the defendant, Dr.
Llewelyn A. Williams, negligently administered the steroid injection to Mr. Maurer,
who sustained a hematoma, resulting in spinal cord compromise that rendered him
paraplegic.

This case has been referred to the undersigned for purposes of resolving a
discovery dispute that arose during the deposition of Dr. Williams.  During that
deposition, the plaintiffs' counsel posed many questions to Dr. Williams over the

course of five and one-half hours, resulting in a transcript 226 pages in length. At nine points during the protracted deposition, the defendant's counsel objected to certain questions, and instructed the defendant not to answer. Those questions were the following:

(a) "Would you agree with me that the standard of care for an anesthesiologist requires you to use your best efforts to avoid harming the patient?" (Doc. 21, Ex. B, at 39.)

(b) "Doctor, would you agree with me that there is a risk in causing harm to a patient if you perform a procedure without knowing the patient's prior medical history?" (Id. at 48.)

(c) "Doctor, would you agree with me that as the significance of the risk increases, a doctor has to be more careful in rendering his care to make sure that risk isn't present?" (Id. at 80-81.)

(d) "Do you consider this result, a 94 platelet count, a significant finding with respect to Nevin's risks of bleeding and undergoing a cervical epidural injection?" (Id. at 118.)

(e) "Now, we've looked through some medical records that you told us you didn't review before this procedure, specifically the blood tests on – on February 19, 2009, showing his platelet count at 94,000, and also some

records that you had before, a year before, where he indicated that he had liver disease and platelet count of 101. Knowing that information now . . . would you agree that . . . when you . . . administered the April 21, 2009 cervical epidural injection on Mr. Maurer, he was at an increased risk of bleeding at that point in time than a patient with a normal platelet count?" (Id. at 157-58.)

(f)  "And in looking at those records, you would've probably seen the February 19, 2009 blood results showing the platelets at 94,000, right? (Id. at 197-98.)

(g)  If you – on December 8, 2009, if you had become aware that Mr. Maurer had cirrhosis of the liver and had a platelet count of 94,000, would you have still given him the cervical epidural steroid injection?" (Id. at 198.)

(h)  But would you agree with me that the INR level of 1.3 and the platelet count of 89,000 explains why Mr. Maurer developed the hematoma; he was at an increased risk of bleeding, right?" (Id. at 214.)

(i)  ". . . . Doctor, if you had known Mr. Maurer's platelet count was below 100 on December 8, 2009, before administering the epidural steroid injection, would you still have administered one?" (Id. at 217.)

The plaintiffs have moved the court to compel Dr. Williams to "submit to another deposition at a location in the Middle District of Pennsylvania for a liberal re-deposition in which he must answer the objected to questions and other questions about the general subject matter of the objected to questions." (Doc. 20, at 3.) The plaintiffs also request the court to order the defendant to bear the costs associated with this second deposition.

The defendant, through counsel, opposes the motion. The defendant maintains that he should be permitted not to answer questions that call upon him to offer expert opinion testimony, when he is being deposed only as a party and fact witness. The defendant also argues, more generally, that the motion to compel should be denied because the plaintiffs have not identified any line of inquiry that was foreclosed or actually prevented by the objections interposed at the deposition. To the contrary, the defendant cites to the record to demonstrate instances where although the defendant's counsel objected and instructed the defendant not to answer, the plaintiffs ultimately pursued substantially similar questioning elsewhere during the deposition and received substantive answers to the questions. The defendant thus maintains that regardless of whether he was privileged not to answer certain questions, the motion to compel should be deemed moot since the plaintiffs actually did explore all lines of

inquiry, and because they have not shown that they were effectively prevented from discovering information that was the subject of the objections now complained of.

Upon consideration, we find that the defendant's counsel erred by instructing his client not to answer questions simply on the basis that the questions were hypothetical, called for opinion testimony, or on any other basis not specifically covered by Rule 30 of the Federal Rules of Civil Procedure. We believe that the better practice would have been for counsel to preserve objections to any line of questioning he deemed inappropriate, but otherwise to have permitted his client to answer questions, in accordance with the guidelines set forth in the Federal Rules. Nevertheless, although it is a somewhat close issue, we do not believe that the plaintiffs have demonstrated that it is necessary to re-open Dr. Williams's entire oral deposition in this particular case, since it appears from the transcript that during the deposition the plaintiffs managed to obtain answers to a number of the questions that were improperly objected to in the first instance, when the plaintiffs' counsel reformulated the questions and explored the subject areas in alternate ways. Moreover, upon review of the entire deposition transcript, we find that the factual record developed during that deposition was robust, and to the extent it was impaired as the result of nine instances where the deponent was instructed not to answer, such impairment was limited.

Thus, although we believe that counsel improperly instructed his client not to answer questions, and in so doing ran the risk of forcing his client to reappear for a second deposition, we do not find that entirely re-opening Dr. Williams's deposition is warranted. Instead, we will authorize the plaintiffs to present each of the nine questions to the defendant in a written deposition under Rule 31 of the Federal Rules of Civil Procedure, without prejudice to the plaintiffs' right to seek further discovery if the responses to the nine questions are deemed unsatisfactory, provided the plaintiffs can demonstrate a need to ask additional factual questions in light of the amount of discoverable evidence they have already obtained through Dr. Williams's deposition and otherwise.

## II. **DISCUSSION**

### A. **Rules 26, 30, and 37 of the Federal Rules of Civil Procedure**

Rule 37 of the Federal Rules of Civil Procedure authorizes a party to move to compel a party to comply with discovery obligations, and specifically provides that:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1).[1]  Under Rule 37, a court may issue an order compelling

discovery where "a deponent fails to answer a question asked under Rule 30 or 31

[governing depositions on oral examination or written questions]."  Fed. R. Civ. P.

37(a)(3)(B)(i).  In this case, the plaintiffs seek entry of an order compelling the

defendant to submit for a renewed oral deposition, so that he may be liberally

questioned about the nine areas of inquiry that were foreclosed at his first deposition

based upon counsel's instructions that he not answer questions posed to him, and any

additional questions that his answers may inspire.

Depositions upon oral examination form a central part of the discovery process

in civil litigation, and like all discovery are bounded largely by relevancy, which is

broadly construed.  In this regard, Rule 26(b) of the Federal Rules of Civil Procedure

---

[1] The plaintiffs' motion, and the defendant's response in opposition, call
upon the court to exercise its authority under Rule 26 of the Federal Rules of Civil
Procedure to regulate discovery in this case.  Issues relating to the scope of
discovery permitted under the Federal Rules rest in the sound discretion of the
court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  This
far-reaching discretion extends to rulings by United States Magistrate Judges on
discovery matters.  See, e.g., Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169,
174 (E.D. Pa. 2004); Farmer's & Merchant's Nat'l Bank v. San Clemente Fin.
Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997).  A court's decisions
regarding the conduct of discovery will be disturbed only upon a showing of an
abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d129, 134 (3d Cir.
1983).

defines both the scope and limitations governing the use of discovery in a federal civil action, providing in pertinent part as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

Rule 30(c)(2) of the Federal Rules of Civil Procedure, in turn, addresses the proper method of objecting to questions asked during a deposition, and provides very limited bases upon which a lawyer may instruct his client not to answer a question. In particular, Rule 30(c)(2) makes it clear that outside of three narrow areas, it is inappropriate for counsel to instruct a deponent not to answer a question asked during a deposition:

> An objection at the time of the examination – whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition – must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2). The rules further provide for the possibility that sanctions may be imposed on any person who "impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). In this regard, and particularly with respect to instructions by counsel for a deponent not to answer questions, the advisory committee notes to Rule 30 expressly observe that "[d]irections to a deponent not to answer a question can be even more disruptive than objections." Fed. R. Civ. P. 30, Advisory Committee Notes.

Guided by the objectives the underlie the policy of broad discovery in civil litigation, and recognizing that the use of depositions represents a central part of the discovery process, one court in this district has explained that a "deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness' own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer." Plaisted v. Geisinger Med. Ctr., 210 F.R.D. 527, 534 (M.D. Pa. 2002) (quoting Hall v. Clifton Precision, 150 F.R.D. 525, 528 (E.D. Pa. 1993)).

Notwithstanding the liberality of the Federal Rules of Civil Procedure with respect to deposition practice and discovery, courts have in certain cases recognized that questions posed to a deponent may raise concerns when the deponent is a fact witness but is, in effect, being repeatedly asked to provide opinion or expert

testimony, or responses to questions that call upon the deponent to address

hypothetical scenarios. Thus, in <u>Howard v. Rustin</u>, another federal court in the

Western District of Pennsylvania granted in part, and denied in part, a motion to

compel the renewed deposition of physician witnesses, where a number of the

proposed questions to be posed called for expert opinion or would require the

deponent:

> to provide specialized knowledge as to MRSA and to comment and draw conclusions on hypothetical situations with the benefit of hindsight, i.e., if Dr. Aiken would have known of Sartori's medical condition, she would have sent her to the hospital earlier in the evening. These questions are more properly posed to an expert in the appropriate field, not to a treating physician offered as a fact witness. While counsel may pose hypothetical questions to a lay witness, said questions must be based on facts of record, e.g., the testimony of a prior witness who has been subjected to cross-examination. However, Plaintiffs' counsel has failed to point to any facts of record upon which he bases the foregoing proposed hypothetical questions to Dr. Aiken.

<u>Howard v. Rustin</u>, No. 06-00200, 2008 WL 1925102, at *5 (W.D. Pa. April 30, 2008)

(internal citations omitted). As the court in <u>Howard</u> noted, in cases where a witness

is not testifying as an expert, Rule 701 of the Federal Rules of Evidence provides that

"the witness' testimony in the form of opinions or inferences is limited to those

opinions or inferences which are (a) rationally based on the perception of the witness,

(b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Civ. P. 701.

Similar concerns have caused other courts in some instances to find that questions posed to a deponent testifying as a fact witness may improperly stray into the realm of questioning reserved for witnesses qualified as experts under Rule 702 of the Federal Rules of Civil Procedure, and in such instances may prevent the deposition testimony from being admissible. See, e.g., In re Diet Drugs, MDL No. 1203, 2006 WL 3007497 (E.D. Pa. Oct. 5, 2006) (granting motion to strike and prohibit the future use of deposition testimony of a physician to the extent the deposition testimony constituted improper expert opinion). See also Asplundh Mfg. Div. v. Benton Harbor Engineering, 57 F.3d 1190, 1201 (3d Cir. 1995) (discussing the limitations on the use and admissibility of opinion evidence under Rule 701).

Guided by these overarching principles of discovery in federal civil litigation, and mindful of the narrow but important limitations on that discovery in cases involving the discovery of opinion testimony, we turn to the instant discovery dispute in this action.

## B. Application of Standards to the Instant Case

The plaintiffs argue that defendant's counsel was entirely without justification to instruct his client not to answer nine questions during the course of a deposition that lasted approximately five and one-half hours and produced over 225 pages of testimony. In terms of the relief sought, the plaintiffs request permission to re-depose Dr. Williams in order to ask the nine disputed questions again; but really the plaintiffs essentially urge the court to re-open the deposition in order to allow for liberal questioning of this witness depending on the answers that he might provide to the nine questions that would be posed to him.

As a threshold matter, we agree with the plaintiffs that the defendant's counsel improperly instructed his client not to answer the nine questions at issue. The Federal Rules make plain that a deponent may be instructed not to answer questions only in three narrow categories, none of which was implicated here. The rules are structured to minimize disruption during the deposition process, and do not permit counsel for the deponent to decide in the first instance which questions his client will be permitted to answer, outside of those three narrow categories. To the extent that counsel attempts to justify his decision to instruct his client not to answer questions on the basis that the questions called for opinion testimony or speculation, this simply

was inappropriate under the Federal Rules and led to unnecessary delay – delay that the rules are plainly intended to mitigate in federal civil practice.[2]

Having found that counsel was in error, however, does not compel us to conclude that Dr. Williams deposition must be reconvened and that plaintiffs' counsel must be permitted to engage in renewed, "liberal" questioning of this witness. The record that was developed during Dr. Williams's deposition is robust, and in a number of instances shows that plaintiffs' counsel successfully elicited testimony by reformulating questions and posing them to the deponent, notwithstanding counsel's improper instruction for the deponent not to answer the questions when they were first presented. We believe, however, that the plaintiffs should have some limited opportunity to present the questions to this witness again, since they were improperly

---

[2] To the extent that the defendant's counsel resorts to numerous decisions of the Pennsylvania Courts of Common Pleas as support for his instruction to his client, he errs. See, e.g., Pearson v. Miller, 211 F.3d 57 (3d Cir. 2000) ("[D]iscovery disputes in federal courts are governed by federal law, especially the Federal Rules of Civil Procedure and the Federal Rules of Evidence, [and therefore] the state statutory confidentiality provisions that have been invoked by the appellants – and on the basis of which the District Court fashioned its order – do not directly govern the present dispute . . . ."). It is true that in cases involving claims of state law, "federal privileges apply to federal law claims, and state privileges apply to claims arising under state law[,]", id. at 66, but in this case this legal principle has no application, because counsel did not instruct his client not to answer questions during the deposition on the grounds that the question implicated a privilege recognized under state law.

prevented from obtaining direct answers to many of these nine questions when they were first asked.

To do so, we will endeavor to strike a balance between the plaintiffs' suggestion that the court essentially authorize a new deposition in order to allow for "liberal" questioning of a witness who already testified at length regarding many relevant subjects, and the defendant's assertion that no further questioning should be permitted even though counsel was manifestly in error by interfering in his client's deposition without justification. In the exercise of our discretion, given the robust quality of the deposition record already compiled, this balance can best be struck by authorizing the plaintiffs to submit each of the nine questions to the plaintiff upon a written deposition under Rule 31, and to direct the defendant to answer each of these questions notwithstanding any objections that counsel may interpose and preserve. In the event the plaintiffs resubmit these questions to the defendant, if they believe that following review of the defendant's answers there is good cause to ask additional follow-up factual questions, they shall be permitted to submit a motion seeking such relief, together with a brief explaining why such further questioning is necessary given the volume of information Dr. Williams has already supplied.

III.   **ORDER**

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED THAT the plaintiffs' motion to compel (Doc. 20.) is GRANTED in part as follows: the motion is granted in order to permit the plaintiffs to resubmit the nine objected-to questions to the defendant as part of a limited written deposition under Rule 31, which the defendant shall be required to answer, subject to any objections that the defendant's counsel may preserve. The court will not, at this time, order the defendant to appear for a renewed oral deposition in order to permit more expansive questioning. However, if the plaintiffs elect to resubmit the nine questions at issue to the defendant through a written deposition, and if after reviewing the defendant's answers to each of those questions the plaintiffs believe that further discovery of factual information is warranted or necessary, they shall be permitted to seek such relief by filing a motion and brief in support of their position.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge